STATE of Wisconsin, Plaintiff-Appellant,

v.

Joseph G. MORETTO, Defendant-Appellant.

Supreme Court

*No. 86–2174–CR. Argued February 3, 1988.—Decided May 25, 1988.*

(Also reported in 423 N.W.2d 841.)

For the plaintiff-appellant the cause was argued by *Jerome S. Schmidt,* assistant attorney general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

For the defendant-respondent there was a brief and oral argument by *Glen L. Cushing,* assistant state public defender, Madison.

WILLIAM A. BABLITCH, J.   The State of Wisconsin (State) appeals from a circuit court order suppressing a knife seized from the vehicle of the defendant Joseph G. Moretto (Moretto), following a search conducted by the police during a stop for temporary questioning. The question certified to this court is whether sec. 968.25, Stats., permits a police officer to search for weapons in the vehicle of an

individual stopped for temporary questioning by the police.

We hold that sec. 968.25, Stats. permits an officer to search the passenger compartment of a vehicle for weapons where the individual who recently occupied the vehicle is stopped for temporary questioning under sec. 968.24, and the officer "reasonably suspects that he or another is in danger of physical injury." Applying this holding, we conclude that the search of Moretto's vehicle and the seizure of the weapon were proper. Accordingly, the postconviction order of the circuit court is reversed, and the judgment of conviction is reinstated.

The facts of this case are not in dispute. On October 6, 1985, at 8:00 in the evening, police officer Towler was dispatched to the residence of David Schlosser (Schlosser). When officer Towler arrived, Schlosser told him that he had received a threatening phone call from an individual he identified as Moretto.

Officer Towler interviewed Schlosser about the call. Schlosser explained that Moretto had called and accused him of owing money. Moretto told Schlosser that he was coming over to collect the money. Schlosser denied owing Moretto any money, and the phone conversation became heated. At one point, Moretto told Schlosser that he was going to "kick his ass up and down the street, that he had better have lots of cops around because he would need them."

Schlosser also told officer Towler that Moretto "had held two friends of his up at Mr. Schlosser's apartment about two weeks before with a weapon," and that he had heard from friends that Moretto was the type that would carry a gun or a knife. Although Schlosser did not know Moretto, he was able to

describe Moretto and his vehicle, a silver Dodge Colt, to officer Towler through descriptions obtained from friends.

As officer Towler left Schlosser's residence, he observed a car matching the description of Moretto's car with two individuals inside drive by the residence. The car proceeded in a normal fashion. Towler radioed for assistance, and then moved his squad car so that he blocked the oncoming vehicle.

Towler approached the stopped vehicle and instructed Moretto, who was in the driver's seat of the car, to step out and place his hands on top of the vehicle. Towler also instructed the passenger in the front seat, Lloyd, to place his hands on the dashboard.

Approximately 30–45 seconds later officer Sawyer arrived. Under officer Towler's request, officer Sawyer had Lloyd step out of the vehicle. Both men were given a pat down search by the officers and moved to the rear of the vehicle. Nothing was found on either man.

Officer Towler then searched the inside of Moretto's car, using a flashlight to illuminate the driver's seat. He found an unsheathed knife, with a four and one-half inch blade, between the bottom cushion of the driver's seat and the harness clip of the seat belt. The blade was sticking up about two inches over the seat. Moretto acknowledged that the knife was his, and Towler seized the knife and arrested Moretto for carrying a concealed weapon.

Prior to trial Moretto moved to suppress the evidence seized by the police. Moretto claimed that the seizure of the knife violated his federal and state constitutional rights against unreasonable searches and seizure, as well as violating ch. 968, Stats. After a hearing on the motion, the circuit court denied Moretto's motion to suppress on federal constitutional

grounds. The court concluded that under *Terry v. Ohio,* 392 U.S. 1 (1968) there was sufficient grounds to stop Moretto, and that the United States Supreme Court's decision of *Michigan v. Long,* 463 U.S. 1032 (1983), permitted a subsequent search of the individual's vehicle for weapons where the officer had "some reason to feel there might be a dangerous weapon in the vehicle." The circuit court did not consider any statutory basis for suppressing the evidence.

On February 6, 1986, a jury found Moretto guilty of the offense of carrying a concealed weapon. Subsequently, the circuit court issued a judgment of conviction and sentenced Moretto to the county jail.

On September 2, 1986, Moretto filed a postconviction motion for relief requesting the circuit court to enter an order suppressing the evidence obtained from the search of his vehicle and granting a new trial. Moretto based his motion on the grounds that the search was contrary to and beyond the scope of sec. 968.25, Stats., which governs the scope of a search conducted during temporary questioning by police.

The circuit court issued an order granting Moretto's motion for postconviction relief, concluding that sec. 968.25, Stats., limits the scope of the search to that authorized by *Terry,* namely, the outer clothing of the person, and therefore that the search of Moretto's vehicle was beyond the purview of the statute.

The State subsequently appealed the circuit court's order claiming that the search of Moretto's vehicle was authorized by sec. 968.25, Stats. The court of appeals then certified the case to this court. Certification was granted on November 17, 1987.

Both parties agree for purposes of this appeal that the initial stop of Moretto by officer Towler was proper under sec. 968.24, Stats., and *Terry.* Our

inquiry focuses on whether sec. 968.25, Stats. permits an officer, who has stopped an individual for temporary questioning under sec. 968.24, to search the individual's vehicle for weapons. Both statutes are cited in full below.[1]

While Moretto acknowledges that the *Long* decision extends the scope of a permissible search under a *Terry* stop to vehicles, he argues that the language of sec. 968.25, Stats., precludes vehicle searches. The circuit court concurred and granted Moretto a new trial, ordering that the knife be suppressed from the new trial.

■

We conclude that the scope of a search for weapons under sec. 968.25, Stats. is not limited to the search of the person but may, in accordance with

---

[1]"**968.24 Temporary questioning without arrest.** After having identified himself as a law enforcement officer, a law enforcement officer may stop a person in a public place for a reasonable period of time when the officer reasonably suspects that such person is committing, is about to commit or has committed a crime, and may demand the name and address of the person and an explanation of his conduct. Such detention and temporary questioning shall be conducted in the vicinity where the person was stopped."

"**968.25 Search during temporary questioning.** When a law enforcement officer has stopped a person for temporary questioning pursuant to s. 968.24 and reasonably suspects that he or another is in danger of physical injury, he may search such person for weapons or any instrument or article or substance readily capable of causing physical injury and of a sort not ordinarily carried in public places by law abiding persons. If he finds such a weapon or instrument, or any other property possession of which he reasonably believes may constitute the commission of a crime, or which may constitute a threat to his safety, he may take it and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest the person so questioned."

*Long,* encompass the search of the passenger compartment of the person's vehicle where the officer "reasonably suspects that he or another is in danger of physical injury." This conclusion is consistent with our prior interpretation of the statute, the underlying policy of the statute, and the constitutional right against unreasonable searches and seizures of which sec. 968.25 is the legislative embodiment.

Section 968.25, Stats., embraces the principles established in *Terry,* in which the United States Supreme Court upheld the "frisk" of an individual stopped for temporary questioning where the police had reasonable ground to believe that the individual was armed and dangerous. The statute authorizes a police officer, who has stopped an individual for temporary questioning under sec. 968.24 and who "reasonably suspects that he or another is in danger of physical injury ...," to "search such person for weapons or any instrument or article or substance readily capable of causing physical injury and of a sort not ordinarily carried in public places by law abiding persons." While the statutory language would appear to limit the scope of a search under sec. 968.25 to that of the "person," our caselaw reveals that the construction of the statute is not limited by the principles of stop and frisk law existing at the time of the statute's enactment.

Specifically, this court's past interpretation of sec. 968.25, Stats., supports the conclusion that the scope of the statute must be ascertained not only by reference to the principles of *Terry,* but to subsequent constitutional developments of those principles. In *State v. Williamson,* 113 Wis. 2d 389, 404, 335 N.W.2d 814 (1983), *cert. denied,* 464 U.S. 1018 (1983), we noted that secs. 968.24 and 968.25 are the "legislative

expression" of the constitutional requirement established in *Terry*. However, we further stated that when interpreting the scope of these statutes, resort must be made not only to *Terry* but the "cases following it." *Id.* at 399–400.

This position is consistent with the Supreme Court's acknowledgement in *Terry*, that the principles set forth did not conclusively establish the scope of permissible searches and seizures for weapons. As the Court carefully noted,

> "'[w]e need not develop at length in this case ... the limitations which the Fourth Amendment places upon a protective search and seizure for weapons. These limitations will have to be developed in the concrete factual circumstances of individual cases.' Contrary to Long's view, *Terry* need not be read as restricting the preventative search to the person of the detained suspect." *Long*, 463 U.S. at 1047, citing *Terry*, 392 U.S. at 29 (citations omitted).

Moreover, the underlying policy of sec. 968.25 Stats. justifies the specific expansion of a protective search for weapons to the vehicle of an individual subject to a *Terry* stop. The central policy of the statute is to "provide for the safety of the officer by permitting a search for weapons." Comments to chapter 255, laws of 1969. This policy is advanced by permitting vehicle searches where the officer has reasonable ground to believe that the individual is dangerous and may be harboring a weapon in his or her vehicle. The Supreme Court in *Long* noted that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surround-

ing a suspect who is stopped for questioning by police. *Long,* 463 U.S. at 1049. As the Court further explains,

> "If a suspect is 'dangerous,' he is no less dangerous simply because he is not arrested.
> "....
> "Just as a *Terry* suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a *Terry* suspect in Long's position break away from police control and retrieve a weapon from his automobile. In addition, if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside. ... In any event, we stress that a *Terry* investigation ... involves a police investigation 'at close range,' when the officer remains particularly vulnerable in part *because* a full custodial arrest has not been effected, and the officer must make a 'quick decision as to how to protect himself and others from possible danger ....'" *Id.* at 1050–52. (Citations omitted.)

■ Finally, we note that the extension of a *Terry* search to the vehicle of the detained individual is in keeping with constitutional law on search and seizure. Consistent with the principles of *Terry,* we have held that an officer is justified in conducting a protective search of an individual stopped for questioning when the officer reasonably believes that the individual may be carrying a weapon and that the officer is in danger of assault. *See Williamson,* 113 Wis. 2d 389; *State v. Goebel,* 103 Wis. 2d 203, 307 N.W.2d 915 (1981); *State v. Flynn,* 92 Wis. 2d 427, 285 N.W.2d 710 (1979), *cert. denied,* 449 U.S. 846 (1980). This position is based on

the above policy of protecting officers and others from harm during the course of the officer's performance of his or her duties. Quoting from *Terry,* we stated in *Williamson,* "'it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.'" *Williamson,* 113 Wis. 2d at 403–04.

Applying this policy, we have extended the scope of a protective search for weapons under a *Terry* stop and frisk. For example, in *Flynn* we held that it is constitutionally permissible under *Terry* to extend a protective search beyond the person of the individual stopped for temporary questioning to the individual's companion where the officer reasonably suspects that the companion might be an accomplice in a recent burglary. *Flynn,* 92 Wis. 2d at 427. We have also acknowledged the constitutionality of a protective search of a vehicle for weapons where the owner of the vehicle is subjected to a *Terry* stop and frisk. Specifically, in *State v. Williamson,* 58 Wis. 2d 514, 206 N.W.2d 613 (1973), we concluded that it was permissible for an officer, who found bullets in the defendant's pockets during a search pursuant to an investigative stop, to subsequently search the defendant's vehicle for a gun, even if the defendant had not consented to the vehicle search, in order for the officer to ensure his safety and that of others nearby. As we explained,

> "Finding the bullets made it not unreasonable to believe and to fear that the gun they fitted was nearby. A frisk of the person of a suspect has been defined as 'a weapons search limited in scope to this protective purpose.' The purpose referred to protection of the lives of law enforcement officers. Here, once having discovered the bullets, that

181

protective and precautionary purpose was hardly fully served by determining that the gun they fitted was not on the person of the defendant. Where the officer reached under the front seat, the defendant, standing by the door or the occupant sitting in the front seat, could also have reached. Given a quick break for the weapon, the driver by the door or the occupant in the car, could have reached into the unlocked glove compartment as did the officer." Id. at 521–22. (Footnotes omitted.)

While these decisions do not clearly specify whether the searches were permissible under both the federal and state constitutional right against unreasonable searches and seizures, guaranteed under the Fourth Amendment of the United States Constitution and Art. I, Sec. 11 of the Wisconsin Constitution, or solely the federal constitutional right, we now clarify that we fully embrace the principles of *Terry* under Art. I, Sec. 11 of the Wisconsin Constitution and that the same results would be reached in these decisions under state constitutional law.

Because the extension of the *Terry* search for weapons to the passenger compartment of a vehicle is consistent with the policy objective of protective searches and constitutional jurisprudence on search and seizure, we conclude that such vehicle searches are constitutionally permissible. Furthermore, because this court has construed sec. 968.25, Stats. to be the "legislative expression" of the constitutional right against unreasonable searches and seizures, *Williamson,* 113 Wis. 2d at 404, it follows that a protective search of a vehicle for weapons is within the purview of the statute as well.

It is important to note, however, that the interpretation of sec. 968.25, Stats., is not automatically altered by every subsequent Supreme Court decision on "stop and frisk" law. As this court stated mostly recently in *State v. Fry*, 131 Wis. 2d 153, 174, 388 N.W.2d 565 (1986):

> "[i]t is always conceivable that the [United States] Supreme Court could interpret the fourth amendment in a way that undermines the protection Wisconsin citizens have from unreasonable searches and seizures under art. I, sec. 11, Wisconsin Constitution. This would necessitate that we require greater protection to be afforded under the state constitution than is recognized under the fourth amendment."

Moretto next argues that even if sec. 968.25, Stats., Art. I, Sec. 11 of the Wisconsin Constitution, and the Fourth Amendment of the United States Constitution permit vehicle searches for weapons during a stop for temporary questioning, we should invalidate the search of his vehicle because the facts of this case do not present the requisite justification for a vehicle search required under *Long*. We disagree.

The Supreme Court in *Long* held that a protective search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is constitutionally permissible "if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Long*, 463 U.S. at 1049, citing *Terry*, 392 U.S. at 21. The Court noted that the issue is

whether a reasonably prudent man under the circumstances would be warranted in the belief that his safety or that of others was in danger. *Long,* 463 U.S. at at 1050.

In *Long,* two police officers had observed the defendant's car traveling erratically and at excessive speed in a rural area at night. The car swerved into a ditch and the officers stopped to investigate. The officers met the defendant who "appeared to be under the influence of something" and followed him to his car. The car door was open and the officers saw a hunting knife on the floor board of the driver's side of the car. The officers stopped the defendant and gave him a "pat down" search. No weapons were discovered. One of the officers then shined his flashlight into the car and saw something protruding from under the arm rest. Upon lifting the arm rest, the officer saw an open pouch containing what appeared to be some drugs. The defendant was then arrested for possession of drugs.

The Court upheld the search of the defendant's vehicle under the principles set forth in *Terry,* concluding that these circumstances justified the officer's reasonable belief that the defendant posed a danger if he were permitted to reenter his vehicle. The court based its decision on the following facts:

> "The hour was late and the area rural. Long was driving his automobile at excessive speed, and his car swerved into a ditch. The officers had to repeat their questions to Long, who appeared to be 'under the influence' of some intoxicant. Long was not frisked until the officers observed that there was a large knife in the interior of the car into which Long was about to reenter. The subsequent search of the car was restricted to those areas to

which Long would generally have immediate control, and that could contain a weapon. The trial court determined that the leather pouch containing marihuana could have contained a weapon." *Long,* 463 U.S. at 1050–51.

Applying the rule of *Long,* and comparing the facts to the instant case, we conclude that a reasonably prudent person in officer Towler's position would be warranted in the belief that his safety or that of others was in danger if Moretto was permitted to reenter his vehicle. As in *Long,* a police officer stopped Moretto in his vehicle at nighttime because the officer's suspicions were aroused. Officer Towler had just spoken with Schlosser about Moretto's telephone call during which Moretto had allegedly threaten to come to Schlosser's house and injure him. Upon departing Schlosser's residence, Towler observed a vehicle drive by which was identical to the one Schlosser had described as belonging to Moretto. Towler radioed for assistance.

Although Towler's initial suspicions about Moretto were based on information obtained from Schlosser rather than on personal observations of Moretto's behavior, as occurred in *Long,* we do not find this distinction significant. Nor do we find it critical that in *Long* the officers had spotted a weapon in the vehicle prior to the vehicle search, whereas in the present case officer Towler was relying on information from Schlosser that Moretto was probably armed. Our prior cases have recognized that an officer may properly rely on the information provided by a citizen-informant where there is some indication of the reliability of the information. *See State v. Paszek,* 50

Wis. 2d 619, 184 N.W.2d 836 (1971). In assessing reliability, this court has gravitated towards a totality of circumstances test. *See State v. Boggess,* 115 Wis. 2d 443, 453–57, 340 N.W.2d 516 (1983); *Illinois v. Gates,* 462 U.S. 213 (1983). Under this approach, no single factor is dispositive of reliability. Instead, several factors are considered such as the basis of the informant's information, the specificity of the information, and independent corroboration of the information by an officer. A deficiency in one indicia of reliability may be compensated for by a strong showing of some other indicia of reliability. *Boggess,* 115 Wis. 2d at 455.

In the present case, Schlosser's information about Moretto was not based on personal knowledge but was instead based on information obtained from friends. However, the detail of Schlosser's information about Moretto and the fact that much of this information was independently verified by officer Towler's first-hand observations more than compensates for any deficiency in Schlosser's personal knowledge and renders the information reliable. For example, Schlosser was able to provide information to Towler on Moretto's name, appearance and vehicle. Further, this information as well as Schlosser's statement that Moretto had threatened to come to Schlosser's house, was corroborated when Towler observed Moretto's vehicle pass by within 15 minutes of Towler's interview with Schlosser and when Towler subsequently stopped the vehicle. Given the detail and substantial corroboration of the accuracy of Schlosser's information, it was not unreasonable for officer Towler to believe that Schlosser's statements regarding Moretto's threat and that Moretto was usually armed could also be true.

Thus, although the pat down search of Moretto revealed no weapons, under the rule of *Long* there was still reasonable ground for officer Towler to believe that Moretto may have been harboring a weapon in his vehicle and that he posed a danger to both Towler and Schlosser. We conclude that under these circumstances a "reasonably prudent person" would be warranted in the belief that Moretto was potentially dangerous and, therefore, that officer Towler did not act unreasonably in taking preventative measures to ensure that there were no other weapons within Moretto's reach before permitting him to reenter his vehicle.

We further note that the search was properly limited to the passenger compartment of Moretto's vehicle. Accordingly, we conclude that the vehicle search was justified under *Long,* and as such did not violate sec. 968.25, Stats., or state and federal constitutional law on unreasonable searches and seizures. Therefore, the knife was properly seized as the fruit of a lawful search pursuant to sec. 968.10(5).

*By the Court.*—The order of the circuit court is reversed and the judgment of conviction is reinstated.