STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert J. PALLONE, Defendant-Appellant.†

Court of Appeals

*No. 98–0896–CR. Submitted on briefs April 8, 1999.—Decided May 5, 1999.*

(Also reported in 596 N.W.2d 882.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven J. Watson* of *Steven J. Watson Law Office* of Elkhorn.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Jennifer E. Nashold*, assistant attorney general.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

NETTESHEIM, J. The issue in this case is whether the property of a passenger in a motor vehicle may be searched when the police have validly arrested the driver but do not have a reasonable basis to detain or probable cause to arrest the passenger. Based on the United States Supreme Court's recent decision in *Wyoming v. Houghton*, 119 S. Ct. 1297 (1999), we hold that such a search is proper. Accordingly, we affirm the conviction of Robert J. Pallone for possession of cocaine with intent to deliver pursuant to § 961.41(1m)(cm)1, STATS.

## *FACTS AND PROCEDURAL HISTORY*

On June 27, 1997, at approximately 11:20 p.m., Officer Jeffrey Recknagel and his partner were located in a parking lot in the village of Fontana. At that time, Recknagel observed a black pickup truck enter a parking stall in the parking lot. From a distance of about twenty feet, Recknagel observed the driver and a pas-

senger exit the vehicle. As the driver exited the vehicle, Recknagel saw him take two drinks from a bottle that he was holding. Recknagel believed the bottle contained beer because it was dark in color and had a red label. Recknagel approached the driver while his partner observed the passenger. Recknagel verified that the bottle contained beer and he obtained identification establishing that the driver was James Riff. Recknagel then advised Riff that he was under arrest for possessing open intoxicants in a motor vehicle and he placed Riff in the squad car.

Recknagel then turned his attention to the passenger who was standing between the pickup truck and the squad car. Recknagel obtained identification establishing that the passenger was Pallone. Recknagel then walked to the driver's side of the truck to commence a search of the vehicle incident to Riff's arrest. At this time, Pallone reached into the vehicle from the passenger side and put his hands on a duffel bag which was located on the bench seat in the truck. Recknagel told Pallone to leave the bag where it was because he was going to search it. Pallone complied. Recknagel testified that he was concerned that the bag might contain a weapon or more containers of alcohol.

While Pallone remained under observation by the other officer, Recknagel searched the vehicle and the duffel bag. Before searching the bag, Recknagel observed attached airline identification tags bearing Pallone's name. Inside the bag, Recknagel observed an open box of sandwich baggies. The box also contained a plastic bottle. Based on his experience, Recknagel knew that plastic sandwich baggies are sometimes used to package narcotics. Recknagel opened the plastic bottle and observed a white powder that he believed to be cocaine. He also observed that one of the

baggies was tied in a knot and contained a substance in the form of a white ball which he also believed was cocaine. Recknagel seized both the bottle and the baggie. Based on these discoveries, Recknagel arrested Pallone. Later testing established that the plastic baggie, but not the plastic bottle, contained cocaine or .cocaine base.

The original complaint and information charged Pallone with possessing more than five grams but not more than fifteen grams of cocaine or cocaine base with intent to deliver pursuant to § 961.41(1m)(cm)2, STATS. Pallone brought a motion to suppress the evidence resulting from the search of his duffel bag.[1] Following an evidentiary hearing at which Recknagel and Riff testified, the trial court denied the motion. The court held that the search was proper as one incident to arrest and that the search properly extended to Pallone's duffel bag and its contents.

Thereafter, the State amended the information to allege that Pallone possessed a lesser amount of cocaine or cocaine base (five grams or less) with intent to deliver pursuant to § 961.41(1m)(cm)1, STATS. Pallone pled guilty to this offense. The trial court withheld sentence, imposed a fine and placed Pallone on probation for three years with conditions, including a period of incarceration in the county jail. Pallone appeals, challenging the trial court's rejection of his suppression motion.

---

[1] Pallone also sought to suppress a statement he gave to the police following his arrest. The admissibility of this statement is not an issue on appeal.

## *DISCUSSION*

The parties' original briefs debate a number of issues including: (1) whether the search of Pallone's duffel bag was valid as a search incident to arrest under *New York v. Belton*, 453 U.S. 454 (1981), *Chimel v. California*, 395 U.S. 752 (1969), and *State v. Fry*, 131 Wis. 2d 153, 388 N.W.2d 565 (1986); (2) whether Pallone waived the *Belton* argument by failing to specifically argue in the trial court that Riff was not arrested until after he had exited the vehicle;[2] (3) whether Pallone, as a passenger, had a reasonable expectation of privacy in the vehicle under *State v. Guzy*, 134 Wis. 2d 399, 397 N.W.2d 144 (Ct. App. 1986), *rev'd in part on other grounds*, 139 Wis. 2d 663, 407 N.W.2d 548 (1987), and *State v. Callaway*, 106 Wis. 2d 503, 317 N.W.2d 428 (1982); and (4) whether the search was justified under the automobile exception to the warrant requirement under *State v. Tompkins*, 144 Wis. 2d 116, 423 N.W.2d 823 (1988).

Following the original briefing in this case, the United States Supreme Court issued its decision in *Knowles v. Iowa*, 119 S. Ct. 484 (1998). There, the police conducted a vehicle search in a routine traffic stop without an arrest. *See id.* at 486. According to the Iowa Supreme Court, the search was authorized by an Iowa statute which provided that the issuance of a citation in lieu of an arrest did not affect the officer's authority to conduct an otherwise lawful search. *See id.* at 487. The Supreme Court disagreed, holding that such a "search incident to citation" violated Fourth Amendment protections. *See id.* at 488. The Court ruled that while concern for officer safety was still pre-

---

[2] Instead, the State contends that Pallone argued in the trial court that Riff had not been arrested.

sent in such a situation, such "threat . . . is a good deal less than in the case of a custodial arrest." *Id.* at 487. Since there was no arrest, the Court concluded that concern for officer safety did not justify the search. *See id.* at 488. In addition, the Court held that the routine traffic stop did not satisfy the further justification for a vehicle search—the need to discover and preserve evidence. *See id.* In response to our invitation, the parties submitted supplemental briefs on the possible application of *Knowles* to this case.

We conclude that this is not a *Knowles* case because here Riff was arrested. Recknagel observed Riff drive the truck into the public parking lot. As Riff exited the vehicle, he was holding what appeared to be a bottle of beer. When Recknagel verified that the contents of the bottle was beer, he had probable cause to arrest Riff for possessing open intoxicants in a motor vehicle, a violation of the traffic code, § 346.935(2), STATS. Section 345.22, STATS., expressly authorizes the arrest without a warrant for a violation of a traffic regulation if the officer has reasonable grounds to believe that the person is violating or has violated a traffic regulation.

In fact, Pallone makes no argument that probable cause did not exist to arrest Riff or that Riff's arrest was invalid. Rather, Pallone contends that one in Riff's position would not have reasonably understood that he was under arrest. As such, Pallone attempts to persuade us that the search of his duffel bag preceded the arrest or that the search occurred without an arrest. However, Recknagel expressly testified that he verbally advised Riff that he was under arrest immediately upon verifying that the bottle contained beer. Riff was then placed in the squad car. This testimony clearly supports the trial court's finding that Riff

was arrested before any search of the vehicle commenced.

Riff's arrest triggered the heightened concern for the safety of the officer and takes this case out from under *Knowles*. Thus, Recknagel was entitled to conduct a vehicle search incident to arrest. The remaining question is whether that entitlement extended to the belongings of Pallone who was a passenger in the vehicle. In providing the answer to this question, we ordinarily would address the issues raised by the parties in their original briefs.

However, on the heels of *Knowles*, the United States Supreme Court has issued its decision in *Houghton*. There the police stopped an automobile for speeding and displaying a faulty brake light. *See Houghton*, 119 S. Ct. at 1299. The vehicle was occupied by the driver and three passengers. While questioning the driver, the officer noticed a hypodermic syringe in his shirt pocket. Under questioning, the driver admitted that he used the syringe to take drugs. The police then ordered the passengers out of the vehicle. One of them, Houghton, complied but left her purse in the vehicle. While searching the vehicle for drugs, the police discovered Houghton's purse and searched it. They discovered drug paraphernalia, a syringe and methamphetamine. Houghton was arrested and charged with felony possession of methamphetamine. *See id.*

Houghton sought suppression of the evidence. The trial court rejected the motion. The Wyoming Supreme Court reversed, ruling that the search exceeded the scope of the permitted search and that there was not probable cause to search Houghton. *See id.* at 1300.

■

The United States Supreme Court reversed and upheld the search. The Court rested its holding principally upon *United States v. Ross*, 456 U.S. 798 (1982), where the Court had earlier stated, "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."[3] *Houghton,* 119 S. Ct. at 1301. Conceding that *Ross* was not a passenger case, the *Houghton* court nonetheless interpreted *Ross* to apply to the property of passengers. The Court stated that "if the rule of . . . *Ross* . . . were limited to contents belonging to the driver, or contents other than those belonging to passengers, one would have expected that substantial limitation to be expressed." *Houghton,* 119 S. Ct. at 1301. The Court also noted that "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Id.* The Court observed that "[p]assengers, no less than drivers, possess a reduced expectation of privacy with regard to the property that they transport in cars which 'travel public thoroughfares.' " *Id.* at 1302 (quoted source omitted) (alteration omitted). Finally, the Court concluded, "When there is probable cause to search for contraband in a car, it is reasonable for police officers . . . to examine packages and containers without a showing of individualized probable cause for each one." *Id.* at 1301.

---

[3] Although the State was obviously operating without the benefit of *Wyoming v. Houghton*, 119 S. Ct. 1297 (1999), in the trial court, the State did cite to *United States v. Ross*, 456 U.S. 798 (1982), during its argument at the suppression hearing.

We stress that *Houghton* does not require, or speak of, probable cause to arrest. Rather, the case speaks of probable cause to search. *See id.* Indeed, the facts of *Houghton* do not reveal an arrest of the driver or any passenger prior to the search. The Court's concluding sentence in *Houghton* is, "We hold that police officers with *probable cause to search a car* may inspect passengers' belongings found in the car that are capable of concealing the object of the search." *Id.* at 1304 (emphasis added). Because Recknagel had probable cause to search the vehicle, we uphold the search of Pallone's duffel bag.

Next, Pallone challenges the seizure of the plastic sandwich baggie which Recknagel found in the duffel bag. His argument is based on the limitations applicable to a protective *Terry*[4] *search as set out in State v. Moretto, 144 Wis. 2d 171, 423 N.W.2d 841 (1988), and § 968.25,* Stats.[5]

But Pallone's argument is misplaced because this was not a *Terry* temporary detention situation at the time of the search. To the contrary, this was a situation in which Recknagel had full probable cause to not only arrest Riff but also to conduct a search of the vehicle and its contents for further evidence relevant to the arrest. Both *Belton* and *Fry* recognize the right of the

[4] Terry v. Ohio, 392 U.S. 1 (1968).

[5] *State v. Moretto*, 144 Wis. 2d 171, 423 N.W.2d 841 (1988), holds that the scope of a *Terry* search is not limited to the search of the person, but may extend, in accordance with *Michigan v. Long*, 463 U.S. 1032 (1983), to the passenger compartment of the person's vehicle where the officer reasonably suspects that he or another is in danger of physical injury. *See Moretto*, 144 Wis. 2d at 177–78, 423 N.W.2d at 843.

police to search any container within the passenger compartment of the vehicle, regardless of whether the container is capable of holding either a weapon or contraband. *See Belton*, 453 U.S. at 461; *Fry*, 131 Wis. 2d at 178, 388 N.W.2d at 576. "We conclude that all closed containers, locked or unlocked, in an automobile which may be searched incident to an arrest can be searched." *Fry*, 131 Wis. 2d at 178, 388 N.W.2d at 576. Since this is the law in a search incident to arrest situation, we know of no sound reason why it should not also be the law in a search under a *Houghton* situation.

Pallone's duffel bag was a likely container for additional evidence relating to Riff's arrest. In the course of searching the bag, Recknagel observed the plastic baggie containing the white ball which he suspected was cocaine. It defies common sense to say that an officer must overlook property which comes into his or her possession during the course of an otherwise valid search simply because the evidence did not relate to the purpose of the search. *See State v. Mabra*, 61 Wis. 2d 613, 623, 213 N.W.2d 545, 550 (1974).

## CONCLUSION

We hold that the search of Pallone's duffel bag was permitted under *Houghton*. We also hold that the discovery and seizure of the contraband located in the duffel bag were proper. We affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.