STATE of Wisconsin, Plaintiff-Respondent,†

v.

Gary A. JOHNSON, Defendant-Appellant.

Court of Appeals

*No. 2005AP573–CR. Submitted on briefs October 14, 2005.
—Decided December 14, 2005.*

**2006 WI App 15**

(Also reported in 709 N.W.2d 491.)

† Petition to review granted 4-11-06.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Eileen A. Hirsch*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Mark A. Neuser*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Snyder, P.J., Brown and Anderson, JJ.

¶ 1. ANDERSON, J.  Following the denial of his motion to suppress, Gary A. Johnson pled no contest to possession of cocaine with intent to deliver in violation of WIS. STAT. § 961.41(1m)(cm)1r (2003–04).[1] On appeal, Johnson argues that the protective search of his vehicle following a routine traffic stop was unlawful because the record does not establish a sufficient specific and articulable basis for an objectively reasonable belief that he was armed and dangerous. We agree and reverse the judgment of conviction and remand for proceedings consistent with this opinion.

### *Facts*

¶ 2.  During the late afternoon on November 5, 2003, two city of Racine police officers, Michael Dummer and Chad Stillman, spotted a vehicle that had an emissions suspension. Dummer noted the driver of the vehicle, Johnson, also failed to signal a turn. The officers followed the vehicle and within a minute stopped the vehicle.

¶ 3.  It was dark when the stop occurred, but streetlights illuminated the inside of the vehicle. Dummer observed Johnson "lean forward" and "his head go lower and come back up." While he could not see Johnson's hands, Dummer stated that Johnson ap-

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

peared to be reaching underneath his front seat. Dummer commented that he observed no other "suspicious movements." Stillman testified that he saw "the driver of the vehicle make a strong furtive movement bending down as if he was reaching for underneath the seat that he was sitting at." Both officers testified that, in their experience, Johnson's activity was consistent with efforts to try and conceal contraband or weapons in the course of a traffic stop. At some point, the officers also noticed that there was a passenger in the car.

¶ 4. Stillman approached the driver's side door and told Johnson that he had been stopped "for emissions suspension." Johnson apparently showed Stillman "adequate paperwork" indicating that the vehicle had passed emissions within the previous couple of days. Stillman then asked Johnson to step out of the vehicle "due to the furtive movement that [he] had seen upon stopping the vehicle." Dummer testified:

> It was just for officer safety, not knowing what maybe he had been reaching for to either grab or to put down thinking it could possibly be a weapon that could injure us. We had him exit from the vehicle so we could see Mr. Johnson's movements, hands, anything on his possession at that time.

Neither of the officers had previous contact with Johnson.

¶ 5. Stillman directed Johnson to the back of the vehicle and Johnson complied. Johnson informed the officers that he had a "bad leg" or a "broken leg." Stillman advised Johnson that he would pat him down for weapons. Johnson did not object. When Stillman patted down his left leg, Johnson fell to the ground, complaining of leg pain. The officers helped him back up. When Stillman resumed the pat down of his left leg,

Johnson again fell to the ground. The officers helped him over to the curb and had him sit down, hoping that would ease his leg pain. Dummer testified that during this time, Johnson was "a little upset," but cooperative and did not make any threats. With Johnson seated on the curb, the passenger was asked to step out of the vehicle. He, too, was frisked for weapons.

¶ 6.   Stillman asked Johnson if there was anything illegal in the car. Johnson said no. Stillman advised Johnson that he was going to search the vehicle, and Johnson did not object. Stillman looked under the driver's seat and found a clear plastic baggie containing marijuana. The officers arrested Johnson and searched him. The officers found cocaine in Johnson's pocket.

¶ 7.   The State charged Johnson with one count of possession of cocaine with intent to deliver and one count of possession of marijuana. Johnson filed a motion to suppress evidence seized from his vehicle. After a hearing on the matter at which the officers recited the facts articulated above, the court issued a written decision denying Johnson's motion. The court did not discuss whether the officers were justified in conducting a protective search of Johnson's vehicle, instead finding that the officers had "obtained Johnson's consent to search the vehicle."

¶ 8.   Subsequently, Johnson pled no contest to a charge of possession of cocaine with intent to deliver and the marijuana charge was dismissed and read in. Johnson appeals from the judgment of conviction.

### Discussion

¶ 9.   Both parties agree for purposes of this appeal that the officers' initial stop of Johnson was proper pursuant to WIS. STAT. § 968.24 and *Terry v. Ohio*, 392

U.S. 1 (1968). The State concedes that Johnson did not consent to the protective search of his vehicle. Our inquiry focuses on whether the totality of the circumstances supports the conclusion that Stillman had reasonable suspicion to justify the protective search for weapons in Johnson's vehicle.

¶ 10.   Whether there is reasonable suspicion that justifies a warrantless search implicates the constitutional protections against unreasonable searches and seizures contained in the Fourth Amendment of the United States Constitution and article I, section 11 of the Wisconsin Constitution. *State v. Williams*, 2001 WI 21, ¶ 18, 241 Wis. 2d 631, 623 N.W.2d 106. "Accordingly, the determination of reasonable suspicion for an investigatory stop and subsequent protective search is a question of constitutional fact." *Id.* "We apply a two-step standard of review to questions of constitutional fact. First, we review the circuit court's findings of historical fact, and uphold them unless they are clearly erroneous. Second, we review the determination of reasonable suspicion de novo." *Id.* (citation omitted).

¶ 11.   The controlling principles of constitutional law applicable to the "reasonable suspicion" standard of a protective search for weapons are firmly established and neither party challenges these principles. Rather, the parties disagree over whether the facts satisfy the constitutional standard of "reasonable suspicion." We therefore begin with a recitation of the fundamental principles and then apply them to the facts at hand.

¶ 12.   In *Terry*, the United States Supreme Court explained that:

> [T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he [or she] has reason to believe that he [or she] is dealing with an armed and dangerous individual, regardless of whether he [or she] has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his [or her] inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he [or she] is entitled to draw from the facts in light of his [or her] experience.

*Terry*, 392 U.S. at 27 (citations and footnote omitted). Thus, "[t]he reasonableness of a protective search for weapons is an objective standard, that is, 'whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety and that of others was in danger' because the individual may be armed with a weapon and dangerous." *See State v. Kyles*, 2004 WI 15, ¶ 10, 269 Wis. 2d 1, 675 N.W.2d 449 (footnote omitted). Courts are to decide on a case-by-case basis, evaluating the totality of the circumstances, whether an officer had reasonable suspicion to effectuate a protective search for weapons in a particular case. *See id.*, ¶ 49.

¶ 13. Both the United States Supreme Court and the Wisconsin Supreme Court have expanded the scope of a search for weapons during a *Terry* vehicle stop to include a search of the passenger compartment of the vehicle. In *Michigan v. Long*, 463 U.S. 1032, 1049 (1983), the United States Supreme Court held that:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer[] in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

In extending the principle of *Terry* to the search of areas accessible to the person stopped, the Court recognized that "roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." *Long*, 463 U.S. at 1049. The Court noted that the justification for a protective search of a vehicle remains even if police have removed the suspect from the vehicle and have the suspect in their control. *See id.* at 1051–52. In such situations, a suspect could still be able to "break away from police control and retrieve a weapon from his [or her] automobile," or if the suspect is not ultimately arrested, he or she "will be permitted to reenter his [or her] automobile, and he [or she] will then have access to any weapons inside." *Id.*

¶ 14.   In *State v. Moretto*, 144 Wis. 2d 171, 182, 423 N.W.2d 841 (1988), our supreme court held that the result reached in *Long* would be the same under state law. The court held that

> the scope of a search for weapons under [Wis. Stat. § 968.25] is not limited to the search of the person but may, in accordance with *Long*, encompass the search of the passenger compartment of the person's vehicle where the officer "reasonably suspects that he [or she] or another is in danger of physical injury."

725

*Moretto*, 144 Wis. 2d at 177–78.

■

¶ 15.   Here, the State emphasizes two key factors as supporting the conclusion that Stillman had reasonable suspicion to justify the protective search of Johnson's vehicle:  Johnson's "furtive" movement of leaning forward in the car and his falling down while Stillman conducted a pat down of his person.[2] As the State points out, the officers both testified that in their experience such movements may be connected with attempts to conceal contraband or weapons.

¶ 16.   Suspicious gestures are certainly important factors to consider in determining whether a protective search of a vehicle was reasonable. We are also to give due weight to the "specific reasonable inferences which [an officer] is entitled to draw from the facts in light of his [or her] experience." *Terry*, 392 U.S. at 27. Further,

---

[2] The State also highlights Johnson's counsel's statement at the motion hearing that "I agree that the testimony of the officers gave them a reasonable suspicion to pat down Mr. Johnson for their own safety, basically a *Terry* pat down, but I don't believe, your Honor, that decision allows a search of the vehicle." The State then argues, "Johnson presents no meaningful explanation as to why the police's reasonable suspicion suddenly evaporated after they patted him down." However, Johnson's counsel's alleged concession that the protective search of Johnson's person was constitutional is a question of law we are not bound to accept on this appeal. *See State v. Gomaz*, 141 Wis. 2d 302, 307, 414 N.W.2d 626 (1987). The initial protective search of Johnson's person did not turn up any weapons or other contraband. It makes sense then for Johnson's counsel to ground the suppression argument on the protective search of Johnson's vehicle and not Johnson's person. We therefore will review the constitutionality of the protective search of Johnson's vehicle independent of Johnson's counsel's statement.

in some cases, "furtive" movements or gestures by a motorist may ripen into an objectively reasonable suspicion that the person may be armed and dangerous. *See, e.g., Williams,* 241 Wis. 2d 631, ¶¶ 51–55, (protective search justified where the driver reached behind passenger front seat upon seeing the officers and the police detained occupants of the vehicle in response to anonymous tip of drug dealing); *United States v. Evans,* 994 F.2d 317, 322 (7th Cir. 1993) (protective search lawful given the defendant's manner of driving when initially observed, furtive gesture and act of voluntarily stopping in front of a reported drug house and the location of the encounter in a high crime neighborhood); *United States v. Fryer,* 974 F.2d 813, 817, 819 (7th Cir. 1992) (movements between the driver and passenger during a traffic stop "in the wee hours of the morning" in a "marginally safe" neighborhood where gangs were active justified search of car); *United States v. Cochran,* 939 F.2d 337, 338–39 (6th Cir. 1991) (when officers stopped the driver, a known felon believed to always carry a firearm, to execute a search warrant at the driver's residence, the rapid movement of the driver's right arm justified protective search); *United States v. Nash,* 876 F.2d 1359, 1361 (7th Cir. 1989) (the combined facts of the driver's furtive gesture and the presence of a jacket covering the area where driver made the gesture justified the protective search); *see generally* Jeffrey F. Ghent, Annotation, *Search and Seizure: "Furtive" Movement or Gesture As Justifying Police Search,* 45 A.L.R.3d 581 (1972–2005) (compilation of cases examining protective searches based on "furtive" movements).

¶ 17. However, "furtive" or suspicious movements do not automatically give rise to an objectively reasonable suspicion that the occupant of the vehicle is armed

and dangerous. *See, e.g., Kyles*, 269 Wis. 2d 1, ¶¶ 48–50 (refusing to adopt per se rules that if certain facts are present—such as "hands in pockets"—reasonable suspicion exists as a matter of law). We must consider such movements in light of the totality of the circumstances. *See id.*, ¶ 49 (reasonable suspicion to be determined on a case-by-case basis, under the totality of the circumstances of the individual case).

¶ 18.   We conclude that the two key factors the State emphasizes, Johnson's "furtive" movement in the car and his falling down during the pat down of his person, when considered under the totality of the circumstances, were not sufficient to create an objectively reasonable suspicion that Johnson harbored a weapon and presented a threat to the safety of the officers. The officers pulled Johnson over for traffic violations—an emissions suspension, perhaps, a turn without a signal—and not for a crime. In response, Johnson produced documentation that the vehicle had passed the emissions test. The officers had no prior contacts with Johnson that would suggest that he would be armed or otherwise dangerous. While it was dark out when the officers conducted the stop, it was only late afternoon and the streetlights provided adequate illumination of the vehicle. Also, the State does not argue that the location of the stop was a high crime area. While Johnson did fall down when Stillman frisked him, the record does not demonstrate that the officers considered this suspicious. Johnson claimed this was due to a "bad leg" and the officers accommodated him by having him sit on the curb. Further, although Johnson was "upset" during the stop, he made no other suspicious movements in the car and was otherwise cooperative and complied with the officers' directions.

¶ 19. Because we conclude, after objectively assessing the totality of the circumstances, that the record does not establish a sufficient specific and articulable basis for an objectively reasonable belief that Johnson was armed and dangerous, we also hold that the protective search of Johnson's vehicle was unlawful. Accordingly, we reverse Johnson's conviction and remand for proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded.