# COURT OF APPEALS
## DECISION
## DATED AND FILED

## March 12, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP53-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2015CF321

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

JEFFERY L. SUMMERS,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Sauk County: PATRICIA A. BARRETT, Judge. *Affirmed*.

Before Blanchard, Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jeffery L. Summers appeals the circuit court's denial of his motion to suppress evidence, and his subsequent judgment of conviction for two counts of delivery of tetrahydrocannabinols (THC).[1] Summers challenges the validity of a search warrant that authorized the search and seizure of evidence at his residence based on a supporting affidavit that referenced, in chronological order, statements by a confidential informant, an unconstitutional video-recorded search of Summers' residence, and three controlled buys of marijuana by the informant from Summers. Specifically, Summers argues that the affidavit did not suffice to establish probable cause because it was tainted by an unconstitutional search. Following the analysis set forth in *State v. Carroll*, 2010 WI 8, ¶28, 322 Wis. 2d 299, 778 N.W.2d 1, we reject Summers' arguments and affirm.

## BACKGROUND

¶2 The parties do not dispute the following procedural facts and facts taken from the affidavit supporting the challenged search warrant.

¶3 On June 12, 2015, a confidential informant offered information to a Sauk County Sheriff's Office detective regarding Summers, including Summers' alleged residence and alleged marijuana-related activities. The detective checked law enforcement, driver's license, and property records, noting Summers' date of birth and that Summers was shown as residing at and owning the residence identified by the informant.

---

[1] The Honorable Guy D. Reynolds issued the decision denying the suppression motion and an order denying Summers' motion for reconsideration, and the Honorable Patricia A. Barrett entered the judgment of conviction.

¶4     On July 9, 2015, the detective provided the informant with a "covert video recorder for the purpose of [the informant] recording the marijuana grow in the basement of" Summers' residence. On the same day, under the detective's direction, the informant entered Summers' residence and video recorded evidence of "several growing marijuana plants" in the basement of Summers' residence. The State does not dispute that the July 9 incident constituted a search that violated the Fourth Amendment. We will generally refer to the incident as the "July 9 search."

¶5     On July 22, August 8, and September 2, 2015, under the detective's direction and supervision, the informant bought marijuana from Summers at Summers' residence (the "controlled buys").

¶6     On September 9, 2015, the detective applied for and obtained a warrant to search Summers' residence for marijuana and marijuana-related items. On September 10, 2015, police executed the search warrant.

¶7     On September 11, 2015, Summers was charged with the following: felony manufacture of THC; three counts of felony delivery of THC; felony maintaining a drug trafficking place; felony possession with intent to deliver THC; and misdemeanor possession of drug paraphernalia.

¶8     Summers moved to suppress "all evidence obtained by the State through the activities of their confidential informant and the search warrant obtained as a result of his information," on the basis that the affidavit supporting the search warrant included a false statement identifying the informant as a

"citizen witness."[2]    During briefing and a hearing on the matter, Summers expanded the basis of his suppression motion to argue that both the controlled buys and the search warrant were tainted by the July 9 search.

¶9    In a comprehensive written decision, the circuit court denied Summers' suppression motion.  Summers subsequently pleaded no contest to two counts of felony delivery of THC, and the remaining charges were dismissed and read in.  Summers appeals.

## DISCUSSION

¶10    Summers argues that the search warrant affidavit failed to establish probable cause to issue the warrant to search his residence.  Specifically, Summers argues that the affidavit did not provide sufficient probable cause upon which to issue a warrant because it was tainted by the July 9 search.  We first summarize the standard of review and applicable general legal principles and then state the specific legal principles pertinent to Summers' arguments and, relying heavily on *Carroll*, apply those principles to the pertinent facts.

### I. Standard of Review and Applicable General Legal Principles

¶11    "Generally, in reviewing motions to suppress, we apply a two-step standard of review.  First, we review the circuit court's findings of fact, and uphold them unless they are clearly erroneous.  Second, we independently review

---

[2] Summers briefly references this false-statement argument in his appellant's brief, notes that the circuit court struck the challenged statement from the affidavit, and makes no further argument on this topic.  In our analysis we construe the affidavit as if it does not contain the "citizen witness" reference and we do not address this topic further.

the application of constitutional principles to those facts." *State v. Scull*, 2015 WI 22, ¶16, 361 Wis. 2d 288, 862 N.W.2d 562 (citations omitted).

¶12 The circuit court here held an evidentiary hearing on Summers' suppression motion but did not make findings of historical fact pertinent to our analysis of Summers' arguments on appeal. Therefore, we confine our analysis to the four corners of the search warrant affidavit and consider de novo Summers' arguments regarding the application of constitutional principles. *See State v. Eason*, 2001 WI 98, ¶11, 245 Wis. 2d 206, 629 N.W.2d 625 (reviewing de novo whether search warrant affidavit established reasonable suspicion to effectuate a no-knock entry where circuit court made no findings of historical fact on that issue).

¶13 "The Fourth Amendment to the United States Constitution and Article I, § 11 of the Wisconsin Constitution establish the right of persons to be secure from unreasonable searches and seizures." *State v. Secrist*, 224 Wis. 2d 201, 208, 589 N.W.2d 387 (1999). While a search performed without a warrant is presumed to be unconstitutional, a search based on a warrant will "pass constitutional muster" as long as the search complies with the following three requirements:

> (1) prior authorization by a neutral, detached magistrate; (2) a demonstration upon oath or affirmation that there is probable cause to believe that evidence sought will aid in a particular conviction for a particular offense; and (3) a particularized description of the place to be searched and items to be seized.

*State v. Tate*, 2014 WI 89, ¶28, 357 Wis. 2d 172, 849 N.W.2d 798 (citation omitted).

5

¶14 This appeal addresses only the second requirement, the establishment of probable cause.

¶15 In deciding whether probable cause existed to issue a search warrant, this court examines the totality of the circumstances presented to the warrant-issuing court to determine whether the court "had a substantial basis for concluding that there was a fair probability that a search of the specified premises would uncover evidence of wrongdoing." *State v. Romero*, 2009 WI 32, ¶3, 317 Wis. 2d 12, 765 N.W.2d 756.

¶16 A determination of whether there is probable cause for a search warrant requires a "practical, commonsense decision whether, given all the circumstances set forth in the affidavit…, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Ward*, 2000 WI 3, ¶23, 231 Wis. 2d 723, 604 N.W.2d 517. In addition, "the warrant judge may draw reasonable inferences from the evidence presented in the affidavit." *State v. Multaler*, 2002 WI 35, ¶8, 252 Wis. 2d 54, 643 N.W.2d 437. "An officer's knowledge, training, and experience are germane to the court's assessment of probable cause." *Carroll*, 322 Wis. 2d 299, ¶28.

¶17 All of the circumstances set forth in the affidavit, including the veracity and basis of knowledge of an informant, must be considered. *See Ward*, 231 Wis. 2d 723, ¶¶ 23, 26. Facts must be brought to the issuing court's attention that enable the issuing court to evaluate the reliability of the particular information furnished. *Romero*, 317 Wis. 2d 12, ¶21.

¶18 In cases where a search warrant "was issued based on both tainted and untainted evidence," we review independently whether "'the untainted evidence was sufficient to support a finding of probable cause to issue the search

warrant.'" ***State v. Herrmann***, 2000 WI App 38, ¶21, 233 Wis. 2d 135, 608 N.W.2d 406 (quoted source and brackets omitted). If the untainted evidence was sufficient, the warrant was valid. ***Carroll***, 322 Wis. 2d 299, ¶44; *see also* ***State v. St. Martin***, 2011 WI 44, ¶17, 334 Wis. 2d 290, 800 N.W.2d 858 (where a search warrant affidavit contained some tainted evidence, the warrant nonetheless may be valid if the affidavit presented sufficient untainted evidence).

## II. Analysis

¶19　As stated, Summers challenges whether the affidavit supporting the warrant established probable cause. Specifically, Summers contends that the affidavit supporting the warrant did not establish probable cause because it was tainted by the July 9 search. The State argues that the warrant was valid because it was supported by an untainted, "independent source" of evidence. *See* ***Carroll***, 322 Wis. 2d 299, ¶43 ("Having determined that [a] warrantless seizure … produced tainted evidence, we turn our attention to the question of whether the resulting warrant [was] nonetheless valid" because it was supported by an untainted independent source of evidence.).

¶20　The court in ***Carroll*** explained the "independent source doctrine" as follows:

> The independent source doctrine derives from the principle that when the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation. As applied to circumstances where an application for a warrant contains both tainted and untainted evidence, the issued warrant is valid if the untainted evidence is sufficient to support a finding of probable cause to issue the warrant. Indeed, so long as a later, lawful seizure is genuinely independent of an earlier, tainted one[,] there is no reason why the independent source doctrine should not apply.

*Id.*, ¶44 (internal citations and brackets omitted).

¶21    The court then set forth the following "two-pronged approach" in applying the independent source doctrine in this context: "First, the court determines whether, absent the illegal [search], the officer would have sought the search warrant. Second, it asks if information illegally acquired influenced the magistrate's decision to authorize the warrant." *Id.*, ¶45. The State bears the burden of showing that both of these two prongs are met. *Id.*, ¶45.

¶22    *First prong*: *Whether the detective would have sought the warrant absent the July 9 search*. Absent an explicit finding from the circuit court, a "clear inference" may "compel the conclusion that law enforcement agents would have sought a warrant had they not obtained tainted evidence." *Id.*, ¶50. As in *Carroll*, we conclude that the following circumstances here "permit such an inference." *See id.*, ¶51.

¶23    Thirteen days after the tainted July 9 search, on July 22, 2015, the detective directed and supervised the first of three controlled buys by the informant. During that controlled buy, the informant went to Summers' residence, paid Summers, and received in return bags of a substance which the detective confirmed on-site as containing THC. Two similar controlled buys were conducted on August 8 and September 2, 2015. Using language from *Carroll*, the results of these controlled buys "compel us to conclude that a clear inference can reasonably be determined to exist here that [the detective] would have sought the warrant even if he had not" conducted the July 9 search. *See id.*

¶24    In his appellant's brief, Summers makes the conclusory assertion that the controlled buys could not support the warrant because "they were not independent sources of information." While Summers provides legal authority

regarding the independent source doctrine, he does not apply that law to the facts of this case, or develop a clear argument explaining why we should conclude that the controlled buys were not an independent source of evidence establishing probable cause. In his reply brief, Summers asserts that "it is more reasonable to conclude [that the July 9 search] prompted the controlled buys." We understand from this that Summers intends to argue that the circumstances here compel the inference that the detective directed the controlled buys because of what he learned from the July 9 search, and therefore the controlled buys did not provide an independent source of evidence establishing probable cause. We reject this argument because it ignores the statements of the detective and of the confidential informant, which, as we now explain, themselves provided grounds for the detective to conduct the controlled buys even if the July 9 search had never occurred.

¶25 In the search warrant affidavit, the detective explained his training and experience in investigating, executing search warrants related to, and making arrests for drug offenses, including specifically offenses related to the possession and manufacture of THC. The detective also noted his experience in working with informants. He then averred that the confidential informant provided the following information to him on June 12, 2015:

> CI told your affiant that Jeffery Summers has an active "marijuana grow" in the basement of his residence at E9250 Dellwood Road. CI said that CI personally observed the marijuana grow within the last couple days. CI also said that Summers houses the growing marijuana plants in two "grow tents" located in the basement of the residence. CI told your affiant that CI knew that Summers has been growing marijuana for quite some time and also had an outdoor marijuana grow on or near his property in 2014. CI told your affiant that CI observed the plants harvested from the outdoor grow in 2014 hanging in one of the many outbuildings located at E9250 Dellwood Road to

9

dry. CI said that Summers also stores his processed marijuana from the indoor grow in one of these same outbuildings.

¶26 The detective averred that he checked specified law enforcement, driver's license, and property records, which showed Summers' date of birth and Summers' residence at and ownership of the address provided by the informant.

¶27 From all of these detailed averments, we conclude that the informant's apparently fresh and detailed allegations regarding Summers' marijuana grow operation at his residence, along with the detective's corroboration of some of those statements, permit the clear inference that the detective would have proceeded with the controlled buys even if the July 9 search had not occurred.

¶28 Summers appears to argue that such an inference is defeated by the State's failure to show the informant's reliability. As we explain, such an argument is itself defeated by the record and applicable law.

¶29 A court must assess a confidential informant's reliability considering the totality of the circumstances. *State v. Boggess*, 115 Wis. 2d 443, 455, 340 N.W.2d 516 (1983). "Under this approach, no single factor is dispositive of reliability." *State v. Moretto*, 144 Wis. 2d 171, 186, 423 N.W.2d 841 (1988). "Instead, several factors are considered such as the basis of the informant's information, the specificity of the information, and independent corroboration of the information by an officer." *Id.*; *see also State v. Jones*, 2002 WI App 196, ¶15, 257 Wis. 2d 319, 651 N.W.2d 305 ("Independent police corroboration of the informant's information imparts a degree of reliability to unverified details." (citation omitted)).

¶30    As shown above, the informant here provided specific, fresh details about Summers' marijuana grow operation at his residence based on the informant's alleged personal observations, and the detective corroborated some of the informant's information.  These factors establish the clear inference that the informant was reliable and provided a basis for the controlled buys that followed, independent of the July 9 search.

¶31    In addition, we note that "there must always be a first time for the use of an informant, and if sufficient care is taken to verify his or her information, such as through a controlled buy, there is no constitutional reason for us to consider it insufficient" to establish probable cause.  *State v. Hanson*, 163 Wis. 2d 420, 424, 471 N.W.2d 301 (Ct. App. 1991).  Here, the controlled buys themselves provided an additional basis for the clear inference of the informant's reliability.  Summers does not in his reply brief contest the State's arguments making this precise point, and we deem Summers to have conceded that the State is correct that the informant was sufficiently reliable so as to establish a basis both for the controlled buys and for probable cause to grant the warrant.  *See United Co-op. v. Frontier FS Co-op.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to an argument made in response brief may be taken as a concession).

¶32    In sum, following the analysis set forth in *Carroll*, the circumstances "compel us to conclude that a clear inference can reasonably be determined to exist here that [the detective] would have sought the warrant even if he had not" conducted the July 9 search.  *See Carroll*, 322 Wis. 2d 299, ¶51.

¶33    *Second prong*: *Whether the July 9 search affected the magistrate's decision to grant the warrant*.  Following *Carroll*, we conclude that the second

11

prong of the analysis "is satisfied [here] inasmuch as the untainted evidence [in the affidavit] provide[d] sufficient probable cause to issue a warrant." *See id.*, ¶52.

¶34 Here, on September 9, 2015, the detective applied for a warrant to search Summers' residence for:

> marijuana; marijuana plants; pots, grow lights, fertilizer and other growing materials; cigarette papers, pipes and other drug paraphernalia; plastic bags, film containers and other items used to package marijuana; plus documents, bills, keys, and other items used to show who is in control of the premises; which items may constitute evidence of crimes, to wit: manufacture and possession of tetrahydrocannabinol, THC, contrary to sections 961.41(1)(h) and (3g)(e) of the Wisconsin Statutes.

¶35 The information provided by the detective as to his training and experience, the statements by the confidential informant, the detective's corroboration of some of those statements, and the controlled buys, is set forth above. The detective also detailed in the warrant affidavit the protocols the detective followed in undertaking and monitoring the controlled buys. The circuit court ruled that the warrant would have been issued based on the controlled buys alone, stating that, even without either the July 9 search or the confidential informant's statements,

> numerous reasonable inferences can be drawn, including, but not limited to, that [the informant] was making the transaction[s] in person in a house owned by [Summers] and [the detective] monitored the contact with Summers on each of the controlled buys. It can further be inferred that marijuana was regularly available for sale at [Summers'] residence from July 23, 2015 through at least September 2, 2015. In the court's view, it would be reasonable for the issuing judge to infer from the affidavit that [Summers] was the seller given the other observations of the affiant and the monitored and controlled circumstances under which the transactions occurred…. Based on the untainted portions of the affidavit, the court concludes that the search warrant application in this case provided probable cause to conduct a search of [Summers'] residence and premises as

authorized by the warrant issued on September 6, 2015, one week after the third controlled buy.

¶36    We conclude that a clear inference can be reasonably be drawn here that the untainted evidence in the affidavit, excluding the July 9 search, sufficed to establish probable cause to issue the warrant. *See Carroll*, 322 Wis. 2d 299, ¶55.

¶37    Summers does not make any argument as to this second prong distinct from the arguments that we have already addressed and rejected.

¶38    In sum, both prongs of the independent source doctrine were satisfied here, following the analysis set forth in *Carroll*. Accordingly, we conclude that the search warrant was valid. [3]

## CONCLUSION

¶39    For the reasons stated, we conclude that the circuit court properly denied Summers' motion to suppress evidence and, therefore, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

---

[3] Summers also argues that the circuit court erred in applying the attenuation doctrine. We do not reach this argument because our application of the independent source doctrine is dispositive.